# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **DANNY L. SMITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **4:17-cv-01223-RDP-JEO** |
| | ) | |
| **STATE OF ALABAMA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM OPINION

This is an action for a writ of habeas corpus filed by Petitioner Danny L. Smith, *pro se*. Smith filed his petition on July 19, 2017, and amended it on August 2, 2018. (Docs. 1, 17).[1] Smith challenges his state-court imposed life sentences for seven separate felony and misdemeanor charges. (Doc. 17). On May 7, 2019, the Magistrate Judge entered a report and recommendation pursuant to 28 U.S.C. § 636(b), which recommended that his habeas petition be denied. (Doc. 34). Smith has filed timely objections to that report and recommendation.[2] (Doc. 37).

---

[1] Citations herein to "Doc(s). ___" are to the document number, and page where specified, of the pleadings and other materials in the court file, as compiled by the clerk and reflected on the docket sheet. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document, which may not correspond to the pagination on the original "hard copy."

[2] Smith's original objections contained 109 pages, with an additional 45 pages of exhibits attached. (Doc. 37). The majority of the exhibits were part of the state court record submitted to this court. The remaining exhibits concern Smith's denial of parole on June 14, 2017. (Doc. 37 at 149-152).

Thereafter, he filed an amended objection, followed by an addendum to his objections. (Docs. 38-39). Below, the court considers each of his objections.

## I. PROCEDURAL HISTORY

On November 6, 2007, Smith pleaded guilty to third degree burglary and third-degree theft of property. (Doc. 7-6 at 25; Doc. 7-7 at 2). On August 7, 2008, Smith pleaded guilty to first degree burglary, second degree assault, first degree assault, second degree criminal mischief, and violation of the Community Notification Act. (Doc. 7-6 at 30; Doc. 7-7 at 3; Doc. 7-31 at 40).

Smith was sentenced on August 7, 2008, under the Habitual Offender Act to life imprisonment in five of these cases, with each of the life terms to run concurrently to all convictions. (Doc. 7-6 at 26-30; Doc. 7-7 at 2; Doc. 7-10 at 31-33). In the two misdemeanor cases (CC-07-785 and CC-07-787), Smith received 12-month sentences, which also ran concurrently with the five life sentences he received on the felony convictions. (Doc. 7-10 at 33). Smith did not file a direct appeal.

Smith filed his first motion for collateral review on July 20, 2009, in CC-07-786 and CC-07-787.[3] (Doc. 7-3 at 16). At some point in September 2009, Smith

---

[3] Those cases were the Burglary 3rd and Theft of Property 3rd, which Smith had pleaded guilty to on November 6, 2007.

amended his petition to include additional claims.[4] (Doc. 7-7 at 16-17). On May 14, 2012, the trial judge dismissed Smith's Rule 32 petition without prejudice, based on Alabama Rule of Criminal Procedure 32.1, which prohibits challenging multiple judgments in one petition. (*Id.*, at 34). Smith appealed that ruling and on December 7, 2012, the Alabama Court of Criminal Appeals affirmed the trial court's dismissal. (*Id.*, 7-7 at 36; Doc. 7-13). The Alabama Supreme Court denied certiorari on March 15, 2013. *See Ex parte Danny L. Smith*, No. 1120438, 162 So. 3d 952 (Ala. 2013) (table).

On April 5, 2013, Smith filed two new petitions for collateral review under Rule 32. (Doc. 7-17 at 29, doc. 7-18 at 5, 9). The state circuit court again dismissed these petitions, this time with prejudice, on September 24, 2013, citing Rule 32.1. (Doc. 7-17 at 2). Smith again appealed. (Doc. 7-18 at 11, 13). On January 12, 2015, the Alabama Court of Criminal Appeals affirmed the dismissal of the petitions based upon Smith's violation of Rule 32.1; however, the appeals court reversed and remanded the circuit court's judgment related to the dismissal of the petition without prejudice. (Doc. 7-21). On February 24, 2015, the Circuit Court of Etowah County complied with the appeals court order. (Doc. 7-23). Smith did not appeal that dismissal.

---

[4] The amendment is undated, and the Etowah County Clerk's Office stamp is illegible. (*See* doc. 7-7 at 16-17).

On March 12, 2015, Smith filed a third Rule 32 petition. (Doc. 7-24 at 4).

The district attorney again moved to dismiss that petition, asserting Smith again

challenged multiple judgments in a single petition. (Doc. 7-25 at 31). The trial court

dismissed the third Rule 32 petition on May 18, 2015, noting Smith had reserved no

issues for appeal and waived his right to petition for post-conviction relief. (Doc. 7-

25 at 32-33). The trial court further advised Smith that the only grounds on which

he could file post-conviction pleadings were those found in Rule 32.2(a)(3) and (5).[5]

(*Id.*). Smith appealed that dismissal[6] and on October 16, 2015, the state criminal

appeals court again affirmed the dismissal of his petitions for co-mingling multiple

judgments in a single proceeding.[7] (Doc. 7-25 at 56; Doc. 27-28). Smith did not

---

[5] Rule 32.2 states in relevant part:

> (a) Preclusion of Grounds. A petitioner will not be given relief under this rule
> based on any ground:
> …
> (3) Which could have been but was not raised at trial, unless the ground for relief
> arises under Rule 32.1(b); or
> …
> (5) Which could have been but was not raised on appeal, unless the ground for
> relief arises under Rule 32.1(b).

In turn, Rule 32.1(b) allows a post-conviction petition for relief if "[t]he court was without
jurisdiction to render judgment or impose sentence." Rule 32.1(b), Ala. R. Crim. P.

[6] Smith actually brought two separate, parallel petitions in his third round of filings seeking
collateral review. (*See e.g.*, Doc. 7-25 at 20, 23, 57).

[7] The court delineated these judgments as "his November 2007 guilty plea proceedings, his August
2008 guilty plea proceedings, and a habeas corpus proceeding." (Doc. 7-28 at 3).

appeal to the Alabama Supreme Court and the Alabama Court of Criminal Appeals issued a Certificate of Judgment on November 4, 2015. (Doc. 7-29).

Smith brought a fourth round of Rule 32 proceedings in November 2015. (Doc. 7-30 at 10). On November 7, 2016, the state filed a response addressing each of the claims in cases CC-07-786 and CC-07-787 on the merits. (Doc. 7-33 at 26). In its December 5, 2016 order denying relief, the Rule 32 court addressed these claims and permanently enjoined Smith from filing any pleading with grounds previously raised or which could have been raised, unless he first showed good cause for his failure to raise such claims at an earlier time. (Doc. 7-33 at 58-65). On appeal (Doc. 7-34 at 5), the Alabama Court of Criminal Appeals held in pertinent part:

> First, Smith alleged in his petition that he was entitled to equitable tolling because the filing of his first Rule 32 petition was timely and was dismissed without prejudice. Smith maintains that, because all three of his previous petitions were dismissed without prejudice because his petitions challenged multiple judgments, he is entitled to equitable tolling.
>
> The Alabama Supreme Court has held that
>
>> "when a Rule 32 petition is time-barred on its face, the petition must establish entitlement to the remedy afforded by the doctrine of equitable tolling. A petition that does not assert equitable tolling, or that asserts it but fails to state any principle of law or any fact that would entitle the petitioner to the equitable tolling of the applicable limitations provision, may be summarily dismissed without a hearing. Rule 32.7(d), Ala. R. Crim. P."
>
> *Ex parte Ward*, 46 So. 3d 888, 897-98 (Ala. 2007). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions

swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999) … *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

In the present case, although Smith alleges that he was entitled to equitable tolling in his petition and again on appeal, his assertion is unavailing. Each of his previous petitions were dismissed on the ground that his petition challenged multiple judgments. Smith maintains that, because his first petition was filed within the statutory period and he was actively seeking judicial remedies from that time, he should be entitled to equitable tolling. Based on his contention, Smith could have had a meritorious argument for equitable tolling when he filed his second petition after the court had explained that he could not file a petition challenging multiple judgments. However, Smith continued to file petitions with the same defect even after being told numerous times by this Court and the circuit court the reason that the petitions were defective. Thus, the circumstances in the instant case that Smith claims entitle him to equitable tolling were fully within Smith's control and were avoidable with diligence from Smith. Therefore, Smith has not pleaded sufficient facts in his Rule 32 petition to satisfy his high "burden of demonstrating in his petition that there are such extraordinary circumstances justifying the application of the doctrine of equitable tolling." *Ex parte Ward, supra.*

(Doc. 7-37 at 3-4). After determining that Smith was not entitled to equitable tolling, and in affirming the trial court's dismissal of the petition, the Alabama Court of Criminal Appeals addressed the specific procedural bars which applied to Smith's petition. (*Id.*, at 5-11). Smith filed a petition for writ of certiorari with the Alabama

Supreme Court, but it was denied without opinion, and a certificate of judgment was entered July 7, 2017. (Doc. 7-40; doc. 7-42).

On July 19, 2017, Smith filed the instant habeas petition in this court. In that petition, he only addressed his claims arising from cases CC-07-786 and CC-07-787. (Doc. 1). At the time, his claims based on his August 7, 2008, pleas were still pending in the Alabama appellate courts. When the Alabama Supreme Court denied certiorari in those cases, Smith brought a second habeas action in this court. *See* 1:18-cv-00688-MHH-JEO. Because all of the petitioner's claims arose out of one sentencing, this court consolidated the two habeas actions and provided the petitioner with the opportunity to file an amended habeas petition. He did so and that amended petition became the operative one for purposes of this court's review. (Doc. 17).

The Magistrate Judge received argument and, on May 7, 2019, entered his report and recommendation. (Doc. 34). Smith filed objections. (Docs. 37-39). The issues in this case are now ripe for decision, and the court has considered *de novo* all the parties' objections and arguments.

## II.    PROCEDURAL OBJECTIONS

Smith advanced several procedural objections to the report. The court considers them below.

### A. Timeliness

Smith's first three objections, as well as his first amended objection, concern the timeliness of his petition in this court. (Doc. 37 at 3-29; doc. 38 at 3). Smith objects to the finding that he filed his first petition for collateral review in the state courts on July 20, 2009. (Doc. 37 at 3-15). Specifically, Smith asserts that his multiple motions to withdraw his guilty pleas, both before and after sentencing, should count as petitions for collateral review. (*Id*. at 3). Smith asserts these "petitions" make the instant petition timely based on equitable tolling. (*Id*. at 3-7). This argument has no basis in law.

Motions filed in state court prior to the time a judgment against a defendant was entered cannot toll that defendant's time limitation to file a petition for habeas corpus pursuant to 28 U.S.C. § 2254. *See e.g., McCloud v. Hooks*, 560 F.3d 1223, 1228 (11th Cir. 2009) (citing *Ferreira v. Secretary for the Department of Corrections*, 494 F.3d 1286, 1293 (11th Cir. 2007) ("AEDPA's statute of limitations begins to run from the date both the conviction and the sentence the petitioner is serving at the time he files his application *become final* because judgment is based on both the conviction and the sentence.") (emphasis added).[8] This objection is due to be overruled.

---

[8] In any event, the court notes that the Magistrate Judge did not make a finding as to the timeliness of the petition in this court. (*See* Doc. 34 at 10, n. 13)

## B. Procedural Default[9]

To the extent Smith is challenging the Magistrate Judge's finding that some of his claims were not properly raised in state court, and thus the claims are unexhausted and therefore defaulted here (Doc. 37 at 7-8), a claim of equitable tolling does not assist him. A state court's finding of procedural default under Alabama Rule of Criminal Procedure 32.2(c) cannot be "cured" by this court applying equitable tolling to the filing of a petition. Under *Martinez v. Ryan*, 566 U.S. 1 (2012), this court may not review "the merits of a constitutional claim that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.* at 9. Smith's contention that the Magistrate Judge made "no finding on the timeliness of the petition filed in this court" creates a "genuine issue of material fact" (Doc. 37 at 9-10) has simply no basis in law. This objection is due to be overruled.

---

[9] Throughout his objections, Smith refers to the Magistrate Judge's findings regarding claims that are procedurally defaulted. (Doc. 34 at 9-18; Doc. 37 at 7-9, 10, 16-18, 28-29, 104). He objects to the Magistrate Judge's synopses of Respondents' arguments and the Alabama Court of Criminal Appeals' rulings. (*See e.g.*, Doc. 37 at 16 (citing Doc. 34 at 10-11)). Smith further objects to the legal standards recited by the Magistrate Judge. (Doc. 37 at 18 (citing doc. 34 at 11)). As these are neither "findings of fact" nor "conclusions of law," Smith's objections to a summary of what the Respondents' argue, to what the Alabama Court of Criminal Appeals held, and to statements of federal law, are due to be overruled. Smith also "averts [sic] this Court's attention here to the Respondents own admissions of Smith's claims in the 'amended document' that <u>does establish</u> Smith's actual claims were erroneously given import deference…." (Doc. 37 at 40) (emphasis in original). The court construes this argument as a claim that the Magistrate Judge misstated Smith's actual claims. However, a comparison of the claims set forth by Smith in his objections (Doc. 37 at 41-43) with those recited by the Magistrate Judge (Doc. 34 at 8-9), reflects the Magistrate Judge accurately summarized each of Smith's claims. In any event, if there are semantical differences, the court has reviewed Smith's claim *de novo* and will address each of them as he has presented them. The objection is due to be overruled.

Smith next argues that this court should apply equitable tolling to find his state court petitions timely because the state court's application of Alabama Rule of Criminal Procedure 32.1(f) is unconstitutional. (Doc. 37 at 15-33; Doc. 38 at 5, 7). As best the court can glean, Smith contends that the state court rule that requires a separate Rule 32 petition for each judgment violates his constitutional rights. (Doc. 37 at 15-17). He relies on *Carey v. Saffold,* 536 U.S. 214 (2002) in making this argument. But, that case does not support his position. *Carey* stands for the wholly unremarkable requirement that, even under the peculiar nomenclature used in California, "intervals between a lower court decision and a filing of a new petition in a higher court are within the scope of the statutory word 'pending,'" so long as the time for filing has not expired. *Carey,* 536 U.S. 214, 223 (2002); *see also Evans v. Chavis*, 546 U.S. 189, 191 (2006) (reaching the same conclusion). This objection is due to be overruled.

In Smith's next objection, he claims the state court improperly applied Rule 32.1(f), and this court must "de novo" determine whether Smith diligently pursued his state court remedies. (Doc. 37 at 19-28, 33-36). Smith bases this assertion on his belief that he did not have to file separate Rule 32 petitions for each judgment against him, as required by Rule 32.1(f), although multiple state courts told him he must do precisely that. (*See e.g.*, Doc. 37 at 36-38). However, ignoring repeated instructions from multiple courts does not demonstrate that Smith "pursu[ed] his

rights diligently." *Holland v. Florida*, 560 U.S. 631, 644 (2010). And, the only impediment to timely filing in state court was Smith himself. Under these circumstances, no reasonable jurist would agree that "extraordinary circumstances" prevented his timely filing. *Id*. This objection is due to be overruled.

Smith next asserts this court's instruction to him to file an amended petition containing all of his claims supports his actions in state court. However, Smith may not pick and choose between state and federal law to advance his arguments. Rather, he must comply with both state and federal procedural requirements, respectively, and those may differ. Smith's objections to the courts' requiring adherence to Rule 31.2(f) are due to be overruled.

To the extent Smith complains the Magistrate Judge improperly found some of Smith's claims unexhausted (Doc. 37 at 43), the court notes that the Magistrate Judge also considered all of Smith's non-procedural claims on their merits. (*See e.g.*, Doc. 34 at 18). Because Smith is not entitled to habeas relief on the merits of his claims, regardless of whether they were found to be exhausted, his objections to the findings of the Magistrate Judge concerning exhaustion are due to be overruled.

Finally, throughout his arguments related to equitable tolling, Smith asserts that he is entitled to an evidentiary hearing. (Doc. 37 at 9, 10, 12-13, 24, 33-35, 38). In a habeas corpus proceeding, "[t]he burden is on the petitioner . . . to establish the need for an evidentiary hearing." *Birt v. Montgomery*, 725 F.2d 587, 591 (11th

Cir.1984) (en banc). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). That means that if a habeas petition does not allege specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, Allen is not entitled to an evidentiary hearing."). Conclusory allegations are simply insufficient to warrant a hearing. *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011). But, that is exactly what we have here. Because Smith's allegations, even if true, do not warrant equitable tolling, no evidentiary hearing is required.

## III. SMITH'S MERITS OBJECTIONS

Smith directs the vast majority of his objections on the merits to the recommended findings of the Magistrate Judge. To the extent possible, the court has grouped Smith's objections by topic. They do not necessarily follow the groupings Smith used in his objections.

### A. Guilty Pleas and Ineffective Assistance of Counsel

Smith challenges the Magistrate Judge's merits analysis in connection with his claim that his guilty plea was involuntary. (Doc. 37 at 45-85, 96-103). The first

set of these objections, advanced under the guise of ineffective assistance of counsel claims, asserts trial counsel did not do exactly as Smith instructed in certain areas, such as challenging evidence or calling his "alibi" witness.[10] (*Id.* at 45-48). However, Smith pleaded guilty to each of the charges. The Magistrate Judge addressed each of the complained-about shortcomings of Smith's counsel at the November 2007 plea hearing, as well as those at the August 2008 plea hearing and sentencing. As the Magistrate Judge correctly concluded, there is nothing in the record suggesting that counsel was ineffective and there is no dispute that Smith's plea was voluntary. (Doc. 34 at 21-40).

Moreover, Smith's claims based on the perceived shortcomings of counsel before the entry of his guilty plea are barred by *Tollett v. Henderson*, 411 U.S. 258 (1973) and its progeny. In *Tollett*, the Court concluded that:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent

---

[10] The court notes that Smith submitted a hearsay-filled affidavit by Leroy H. Reynolds concerning the availability, or lack thereof, of witnesses for purposes of trial. (Doc. 37 at 138). Statements such as "I later learned that Mr. Clark appeared at the courthouse" (*id.* at 139) are rank hearsay. Statements such as "Mr. Clark told my daughter 'she's lying'" (*id.* at 140) are double or triple hearsay. Statements in the affidavit of Patricia R. Jarvis (*id.* at 144) concerning her father's questions to Heather Clark fare no better. She states "I then ask[ed] Jason Clark if Danny Smith was guilty of the criminal charges that Brandi Smith (Danny Smith's wife at the time), Mary Wilson (Danny Smith's mother-in-law at the time) and Shane Deerman (Brandi Smith's live in boyfriend at the time she was still married to Danny Smith), had filed against him. Jason Clark, again, shook his head indicating no." (*Id.* at 144-45). Even if these affidavits were admissible (and the court need not rule on that question), nothing in them demonstrates that Smith's guilty pleas were involuntary or improper.

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Id.* at 267; *see also Lefkowitz v. Newsome*, 420 U.S. 283, 289 (1975) ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process.") (quoting *Tollett*, 411 U.S., at 267)). When he entered his pleas of guilty, Smith waived any right to subpoena witnesses and gather evidence, and also abandoned his right to re-litigate what he believes the facts would have been had he gone to trial.[11] Smith's objection to the factual findings concerning his guilty pleas, and his claims of ineffective assistance of counsel based thereon,[12] are due to be

---

[11] Smith alleges his evidence would have shown a plot to murder him. (Doc. 37 at 65). He claims this was all part of a plan to entice him to a place where Smith's wife's live-in boyfriend (Deerman) could shoot him. (*Id.*). Of course, Smith's asserted plot would still be consistent with a finding that Smith indeed broke into the home in question, took Deerman's shotgun, and knocked Deerman unconscious with it. (*Id.*). Smith's murder theory thus depends on Deerman firing the shotgun at Smith (as Smith was attempting to flee the scene). (*Id.*). The question of whether separate charges could have been (or even should have been) brought against Deerman has no bearing on whether Smith committed assault and burglary. And again, to be clear he admitted he committed those crimes in his guilty pleas. (*See also, id.*, at 83-84). Certainly, nothing in Smith's factual claims establishes he is innocent of breaking into Mary Wilson's home and threatening its occupants.

[12] Woven throughout much of his objections are Smith's statements concerning the validity of his guilty plea and effectiveness of counsel. For instance, he argues that "[h]ad counsel not lied to Smith regarding his 'alibi' witness Smith would have had 'evidence' before the jury that 'Smith was not in the area on the date of the alleged burglary and theft, nor was Smith in jail on the date the alleged victim would testify to, by lying to Smith about his 'alibi witness's' whereabouts was by counsel's design to 'induce' Smith's mind to think he had no chance at trial with a jury, this made the plea confession involuntary." (Doc. 37 at 47). Smith's assertions are not sufficient to warrant habeas relief. *See e.g., Preetorius v. United States*, 2017 WL 4563085, at *13 (S.D. Ga. July 19, 2017) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition ... unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Additionally, because there are serious questions about whether some (if not all) of the evidence Smith asserts should have been introduced at trial would have been inadmissible in the first place, there are also serious questions about whether any alleged failure to introduce such evidence would have violated Smith's Sixth Amendment right to effective

overruled.[13]

Smith next asserts that, but for counsel's ineffective assistance, he would not have pleaded guilty. (Doc. 37 at 50-52). As detailed by the Magistrate Judge in his recitation about the plea colloquies, Smith's claims about his supposedly involuntary pleas are directly refuted by the undisputed record. Smith's suggestion that his case falls within the rationale of *United States v. Cronic*, 466 U.S. 648 (1984), is way off target. As the Court has observed about its decision in *Cronic*:

> *Cronic* held that a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," *Bell v. Cone*, 535 U.S. 685, 695 (2002), when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Cronic, supra*, at 658. *Cronic*, not *Strickland*, applies "when ... the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," 466 U.S., at 659–660, and one circumstance warranting the presumption is the "complete denial of counsel," that is, when "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," *id*., at 659, and n. 25.

---

assistance of counsel, even if the case had gone to trial. *See e.g., Owen v. Sec'y of Dept. of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (where underlying claim lacks merit, counsel is not deficient for failing to raise it); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance.").

[13] Smith's contends that his attorney's decision to file a motion to continue somehow denied him effective counsel. (Doc. 37 at 74-75). That contention is hard to understand. Smith's claim that his attorney had insufficient time prior to trial to serve subpoenas fails for two reasons (at least). First, a continuance would have given counsel more time, not less. Second, his plea of guilty to the offenses negated any need for witnesses at trial. *See Tollet*, 411 U.S. at 267.

*Wright v. Van Patten*, 552 U.S. 120, 124–25 (2008) (alterations in original).  Simply put, *Cronic* is not applicable to Smith's claims.

Smith also objects to the application of the standard announced in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) to his claim that his guilty plea was not voluntary.  (Doc. 37 at 53).  *Alford* concluded that the proper standard for judging the voluntariness of a plea "was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 400 U.S. at 31 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).  Smith provides no support for his argument that, under *Alford*, his guilty pleas were involuntary or not knowingly offered.  Smith's reliance on *McMann v. Richardson*, 397 U.S. 759 (1970), does not assist him. In *McMann*, the court held that "a defendant[s] [mere allegation] that he pleaded guilty because of a prior coerced confession [does] not, without more, entitle[] [him] to a hearing on his petition for habeas corpus."[14]  *Id*. at 768.  *See also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity" and this constitutes a "formidable barrier in any subsequent collateral proceeding.").  For all these

---

[14]    In *McMann*, the Court noted, "[f]or the defendant who considers his confession involuntary and hence unusable, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or if necessary, in a collateral proceeding, and win acquittal, however guilty he might be."  397 U.S. at 768.

reasons, Smith's objections based on the voluntariness of his pleas are due to be overruled.

Finally, Smith claims his plea was involuntary because neither his counsel nor the trial court ensured that Smith "knew the factual elements of the charges of 'serious physical' injury." (Doc. 37 at 96). And, in his amended petition, Smith contends the state could not prove "serious physical injury." (Doc. # 17 at 31). He now also claims that if his counsel had informed him of the proof requirements related to this element, he would not have pleaded guilty to first degree assault. (Doc. 17 at 31). The Magistrate Judge found Smith could not demonstrate prejudice based on his plea because even dismissal of this charge would not have impacted his life sentence. (Doc. 34 at 41). Smith objects to this finding, and cites *Rutledge v. United States*, 517 U.S. 292 (1996). But, Smith's reliance on *Rutledge* is misplaced. In *Rutledge*, the Supreme Court was concerned with a defendant receiving two separate sentences for the same conduct—specifically charges for conspiracy to distribute pursuant to 21 U.S.C. § 846 and a "continuing criminal enterprise" pursuant to 21 U.S.C. § 848. The Court did not address whether the trial court and/or counsel ensured the defendant understood every element of a crime. *Id.*, at 306. So, the actual holding in *Rutledge* provides no assistance to Smith.

In any event, Smith has admitted he knocked his wife's boyfriend, Deerman, unconscious. (Doc. 37 at 65). While Smith contends in general terms that

Deerman's injury was not particularly serious (*id.* at 102-103), his beliefs do not support a finding of any constitutionally deficient plea. Smith's plea colloquy demonstrated that Smith clearly understood the charges against him. And, the Alabama Court of Criminal Appeal's conclusion that Smith's plea was voluntary and intelligent was reasonable. *See Massey v. Warden*, 733 F. App'x 980, 989-91 (11th Cir. 2018). This objection is due to be overruled.

## B. Strategic Choices of Counsel

Many of Smith's complaints about his trial counsel concern matters of strategy, such as what witnesses to call, or one counsel's assessment of the trial evidence as a "train wreck." (Doc. 37 at 45-48, 57-63). In relation to these complaints, Smith does not articulate any particular findings of the Magistrate Judge that he disagrees with. Instead, Smith rehashes arguments made to the Magistrate Judge. (*Id.*). *See Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989) ("In order to challenge the findings and recommendations of the magistrate, a party must [] specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.").

In any event, '[a]n attorney's strategic choices made after thorough investigation of the law and facts 'are virtually unchallengeable.'" *Ledford v. Warden, Georgia Diagnostic & Classification Prison*, 818 F.3d 600, 647 (11th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). "'Which

witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" *Ledford*, 818 F.3d at 647 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc)). The fact that a particular approach or defense ultimately proved to be unsuccessful, or that habeas counsel (or even the habeas petitioner) would have approached a criminal action differently, does not demonstrate ineffective assistance of counsel. *Waters*, 46 F.3d at 1522; *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) ("Counsel's reliance on particular lines of defenses to the exclusion of others---whether or not he investigated other defenses---is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.").

To reiterate, Smith waived his right to subpoena witnesses and gather evidence when he entered his pleas of guilty. His plea colloquies reflect that each of Smith's pleas of guilty were "intelligent and voluntary." He may not continue to re-litigate what he believes the facts would have been had he not pleaded guilty and gone to trial. Smith's objections based on his trial counsels' strategic decisions are therefore due to be overruled.

### C. Double Jeopardy

Smith objects to the Magistrate Judge's finding that double jeopardy is not implicated by charges for both burglary and assault in one indictment. (Doc. 37 at

85-91).  His objection is without merit.

The double jeopardy clause protects against multiple punishments for the same offense.  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  In determining whether the crimes charged are "the same offense," the inquiry is not whether similar (or even largely identical) facts may support such charges; rather, the test is "whether each provision requires proof of a fact which the other does not."  *Albernaz v. United States*, 450 U.S. 333 (1981) (quoting *Blockburger v. United States*, 284 U.S. 299, 305 (1932)).  Under Alabama law, second degree assault and first-degree burglary require proof of different facts.  *See Smith v. State*, CR 16-0782, Doc. 71 at 18-19 (Ala. Crim. App. 2017).[15]  Specifically, to establish a conviction of second degree assault pursuant to § 13A-6-21(a)(1), the state must prove beyond a reasonable doubt that the defendant "caus[ed] serious physical injury to [the victim]" and the defendant acted "[w]ith intent to cause serious physical injury to another person."[16] For first degree burglary pursuant to § 13A-7-5(a)(2), the elements required are "(1)

---

[15] This court may take judicial notice of state court proceedings.  *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (judicial notice taken of an online judicial system similar to Alacourt.com) (citing Fed. R. Evid. 201); *Grider v. Cook*, 522 F. App'x 544, 546 n.2 (11th Cir. 2013) (citing *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013)).

[16]  Although unclear from his objections, Smith may be attempting to challenge the prosecution's decision to charge him with assault second degree, rather than misdemeanor assault.  (Doc. 37 at 100).  Regardless of whether Smith believes his crimes fit the charges to which he pleaded guilty, this is wholly a matter of state law.  Smith failed to establish any basis for finding the charges against him were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the United States Supreme Court.  *See e.g., Dunn v. Madison*, -- U.S. --, 138 S. Ct. 9, 11 (2017) (quoting 28 U.S.C. § 2254(d)).

[t]hat the defendant knowingly and unlawfully entered or remaining unlawfully in the dwelling of (victim); (2) [t]hat in doing so, the defendant acted with the intent to commit a crime namely therein … and (3) [t]hat while in the dwelling or in effecting entry thereto, or in the immediate flight therefrom, the defendant … caused physical injury to any person who was not a participant in the crime." *Id.* Because assault and burglary require proof of separate elements, no constitutional violation occurred when Smith was convicted of both. Smith's objection to the report and recommendation on this basis is due to be overruled.

### D. Alabama Community Notification Act Repeal

Smith objects to the Magistrate Judge's finding that the repeal of the Alabama Community Notification Act ("ACNA") of 1996, and its subsequent replacement with the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"), did not relieve Smith of his duty to register (nor make his relevant conduct not criminal). (Doc. 37 at 92-95). In particular, Smith argues that the repeal of the ACNA means his prior conduct is no longer criminal. (*Id*. at 92). While this may be true, the problem with Smith's argument is that this claim arises solely under state law and therefore does not raise any claim of a constitutional nature. This objection is therefore due to be overruled.

### E. Actual Innocence

Smith's assertion of "actual, factual innocence" (Doc. 37 at 62, 78-79) is also

off the mark. First, Smith failed to raise this claim in his amended petition. (*See* Doc. 34 at 14). But, even if he had raised it, "actual innocence" has never been held to be a stand alone basis upon which habeas relief may be granted.[17] Rather, it serves as a gateway through which a petitioner may pass," whether impeded by a procedural bar or a statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court made clear that a claim of actual innocence may excuse a procedural default by the failure to raise such claims in state court. *Id.* at 522. Here, however, the Magistrate Judge considered Smith's claims on their merits; therefore, Smith's arguments[18] about his actual innocence are off the mark, and this objection is due to be overruled.

---

[17] The Supreme Court "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin*, 569 U.S. at 392. The Eleventh Circuit has assumed such a claim may be "brought in a *capital* case" where a demonstration of actual innocence "would render the *execution* of a defendant unconstitutional" and therefore merit habeas relief if no state avenues were available. *Magluta v. United States*, 660 F. App'x 803, 807 (11th Cir. 2016) (emphasis in original). However, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). It is not a federal court's role "to make an independent determination of petitioner's guilt or innocence based on evidence that has emerged since trial," because the federal court's role in habeas claims is "to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002).

[18] Smith alleges that not only is he innocent of the charges to which he pleaded guilty, but also that had his attorney collected the evidence Smith instructed him too, a "reasonable jurist would have concluded Brandi Smith lied to get the [Protection from Abuse ("PFA") order], then apparently had a motive for obtaining that PFA, and that Brandi Smith was clearly 'enticing ' Smith by coming to his workplace just before this incident, and that Smith was indeed being set up to be murdered." (Doc. 37 at 64).

Smith also suggests that, but for threats made to his witnesses by Brandi Smith and Mark Wilson, he would have had witnesses to testify that he was innocent. (*See e.g.*, Doc. 37 at 76-80). For example, he asserts Jason Clark would have appeared to testify on his behalf, but threats from Smith and Wilson scared Clark away. (*Id.* at 77). But again, because he ultimately pleaded guilty, Smith's objections based on his "actual innocence" and his arguments about what may have happened at trial if he had not pleaded guilty are without merit and therefore due to be overruled.

## F. Habitual Offender Act

In his addendum to his initial objections, Smith challenges the imposition of his sentence based on Alabama's Habitual Offender Act. (Doc. 39). Smith claims his stipulation that he had to his prior felony convictions did not waive the state's burden to prove those convictions, and therefore he is due habeas relief.[19] (*Id.* at 3-5). However, as the state court records demonstrate, after his first guilty plea, trial counsel refused to stipulate to Smith's prior convictions (Doc. 7-7 at 78-79); however, Smith later stipulated to these prior felonies. (Doc. 7-10 at 29).

State court determinations of factual issues are presumed correct and a habeas petitioner bears the burden of rebutting that presumption by "clear and convincing

---

[19] This claim, challenging the propriety of the waiver of the state's burden of proof to establish at least three prior felonies, is raised for the first time in Smith's addendum to his objections. (Doc. 39). He did, however, challenge other aspects of the application of the Habitual Offender Act to his sentence. (*See e.g.*, doc. 7-37 at 9-10).

evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010) (quoting 28 U.S.C. § 2254(e)(1)). Whether or not Smith had three prior felonies is a question of fact suitable to stipulation. *See* § 13A–5–10.1(a), Ala.Code 1975 ("Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime."); *see also Hines v. Thomas*, 2016 WL 4492816, *19 (S.D. Ala. Feb. 1, 2016) (noting that "Alabama courts held that prior convictions could be proved by a certified minute entry, a certified judgment entry, or by the defendant's admission of the prior conviction.") (citations omitted); *Debardelaben v. Price*, 2015 WL 1474615, *6 (M.D. Ala. 2015) (gathering cases on the point of law). Had Smith refused to stipulate to the existence of these prior felonies, the state would have had the option of producing certified copies of the convictions. *See e.g., Jones v. White*, 992 F.2d 1548, 1555 n.4 (11th Cir. 1993). But, in light of his later stipulation, wherein he agreed that he did in fact commit the felonies at issue, that was unnecessary. For these reasons, Smith's objection is without merit and therefore due to be overruled.

## IV. CONCLUSION

Having carefully reviewed and considered *de novo* all the materials in the court file, including the Magistrate Judge's Report and Recommendation and Smith's objections, amended objections and addendum, the court concludes that the Magistrate Judge's findings are due to be and are hereby **ADOPTED** and his

recommendation is **ACCEPTED**. Smith's objections are **OVERRULED**. Accordingly, the petition for writ of habeas corpus is due to be denied and dismissed with prejudice.

Further, the court concludes the petition does not present issues that are debatable among jurists of reason. Therefore, a certificate of appealability is due to be denied. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a*), Rules Governing § 2254 Proceedings*. A separate Final Order will be entered.

    **DONE** and **ORDERED** this February 19, 2020.

                        **R. DAVID PROCTOR**
                        UNITED STATES DISTRICT JUDGE